IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Criminal Case No.  14-cr-00464-PAB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

JUAN MANUEL ALVARADO-RICO,

      Defendant.

_____

**ORDER**
_____

      The matter comes before the Court on defendant Juan Manuel Alvarado-Rico's

Motion to Dismiss Indictment for Violation of Sixth Amendment Right to a Speedy Trial

[Docket No. 16].  The United States opposes the motion.  Docket No. 17.  The

defendant did not file a reply.

**A.  Facts and Procedural Posture**

      The Denver Police Department arrested the defendant on October 10, 2014 for

soliciting prostitution.  Docket No. 16 at 1.  The Denver Police Department booked him

into the Denver County Jail, at which time the defendant was fingerprinted and routine

identifying information was obtained from him, including his home address and

telephone number.  *Id*. at 1; Docket No. 16-1 (Summons and Complaint).  The next day,

an agent from the Immigration and Naturalization Service ("ICE") interviewed the

defendant at the Denver County Jail.  Docket No. 16 at 2.  According to the

government, the defendant admitted to each of the elements of the charge contained in

the indictment during this interview.  Docket No. 17 at 2, 9-10.  Later that day, ICE lodged a detainer against the defendant.  *Id*. at 2; Docket No. 16 at 2.  The jail informed ICE that it would not honor the detainer and would release the defendant on October 11.  Docket No. 16 at 2.  The jail did release the defendant that day.  *Id*.  On November 17, 2014, a grand jury in the District of Colorado indicted the defendant for Illegal Reentry of a Previously Removed Alien in violation of 8 U.S.C. §§ 1326(a) and (b)(2).  Docket No. 1.  An arrest warrant issued the same day.  Docket No. 2.  The defendant was arrested on the warrant on March 4, 2020, over five years later.  Docket No. 5.  At his initial appearance on March 4, 2020, the defendant was released on a personal recognizance bond.  Docket No. 6.  A trial in this matter is set for May 11, 2020.  Docket No. 15.

The defendant claims that, at the time of his arrest, he was living in an apartment complex in Thornton, Colorado.  Docket No. 16 at 3; see also Docket No. 14 at 1.  The defendant states that, since his release from custody on October 11, 2014, he has resided continuously in Thornton, Colorado.  Docket No. 16 at 3.  He indicates that he "was completely unaware of the existence of the federal indictment." *Id*.  The defendant filed the motion to dismiss on April 3, 2020, Docket No. 16, claiming that the delay of over five years between his indictment and trial violates his right to a speedy trial under the Sixth Amendment to the United States Constitution.  *Id*.

The government indicates that the arrest warrant in this case was entered into National Crime Information Center ("NCIC") database on November 21, 2014, Docket No. 17 at 5, but that the defendant was neither encountered nor arrested by law

2

enforcement officers before March 4, 2020.  *Id*.; see also Docket 14 at 3 (indicating no

other arrests since October 10, 2014).  The government states that law enforcement

officers took the following steps to locate the defendant before his arrest in March

2020:

> In March 2015, law enforcement officers from the Fugitive
> Operations Support Center ("FOSC") reviewed
> Alvarado-Rico's file and found that there were no leads to
> his whereabouts.  In March 2018, ICE forwarded
> Alvarado-Rico's file to the Mobile Criminal Alien Team
> ("MCAT") for assistance in locating Alvarado-Rico.  MCAT
> reviewed the case and found no leads as to Alvarado-Rico's
> location.  In November 2019, ICE forwarded Alvarado-Rico's
> file to the Fugitive Operations Unit ("FOU").  The FOU
> reviewed the case and found no leads as to Alvarado-Rico's
> location.  In January 2020, members of the Violent Crime
> and Alien Section ("VCAS") found a possible address and
> vehicle information through records checks.  VCAS
> members forwarded this information to the FOU for
> follow-up.  The FOU conducted follow up and investigation
> that eventually led to Alvarado-Rico's arrest on March 4,
> 2020.  The investigation revealed that Alvarado-Rico drove
> multiple vehicles registered to other persons and utilized his
> older brother's identification.  Alvarado-Rico also had a
> counterfeit Mexican identification card in his possession
> when arrested.  In addition to the investigative work
> conducted by FOSC, MCAT, and FOU, at least four
> separate VCAS agents were also assigned to the case
> between 2014 and 2018; each of whom would have
> performed their own independent records check and
> investigation.

Docket No. 17 at 6.  The defendant was arrested at an address different than the

address he provided upon arrest in October 2014.  *Id*. at 6-7.

### B.  Analysis

The defendant claims that his Sixth Amendment right to a speedy trial was

violated by the government's negligent delay in arresting him.  Docket No. 16.  The

Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. "[A]lthough the right is somewhat amorphous, the remedy is severe: dismissal of the indictment." *United States v. Seltzer*, 595 F.3d 1170, 1175 (10th Cir. 2010). In *Barker v. Wingo*, 407 U.S. 514, 530–32 (1972), the Supreme Court created a four-part inquiry to determine whether a particular delay violates a defendant's constitutional right to a speedy trial. "Courts applying the *Barker* test must balance the following factors: '(1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant.'" *United States v. Margheim*, 770 F. 3d 1312, 1325-26 (10th Cir. 2014) (quoting *United States v. Yehling*, 456 F.3d 1236, 1243 (10th Cir. 2006)). The first factor serves as a triggering mechanism to determine whether a court needs to evaluate the remaining factors. *Id.* at 1326. If the length of the delay is long enough to be considered "presumptively prejudicial," *Yehling*, 456 F.3d at 1243, a court must then evaluate the other three factors. Delays approaching one year generally satisfy the requirement of presumptive prejudice. *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992); *Jackson v. Ray*, 390 F.3d 1254, 1261 (10th Cir. 2004); *United States v. Batie*, 433 F.3d 1287, 1290 (10th Cir. 2006); *Margheim*, 770 F.3d at 1326.

**Length of the Delay** - The defendant argues that his speedy trial right began on November 17, 2014, when he was indicted. Docket No. 16 at 4. Because five years and three months passed before he was arrested, the defendant claims that the delay was presumptively prejudicial. *Id.* The Court agrees. As noted above, on many occasions the Tenth Circuit has found that delays of approximately one year satisfy the

standard; a delay of over five times that certainly does.[1]  Because the Court finds that

the first factor triggers additional inquiry, it will now consider the other three factors.

**Reason for the Delay** - The defendant concedes that he has no evidence of any

purposeful delay by the government, but states that he has seen no evidence that the

government was diligent in trying to locate him.  Docket No. 16 at 5.  He therefore

argues that, "at best, the government was negligent in attempting to locate and

apprehend Mr. Alvarado-Rico."  *Id*.  In particular, the defendant claims that he "actually

remained in Thornton, Colorado, the same city he was living in when arrested in 2014,

throughout the whole five plus year delay."  *Id*. at 9.

However, as noted in the government's response, many efforts were made to

locate the defendant before his eventual arrest.  His arrest warrant was placed into

NCIC within six weeks; the Fugitive Operations Support Center reviewed the matter in

March 2015, but found no leads as to his whereabouts; the Mobile Criminal Alien Team

found no leads three years later in March 2018; and in November 2019 the Fugitive

Operations Unit also found no leads.  Docket No. 17 at 5-6.  The Violent Crime and

---

[1] The government argues that "triggering mechanism for computing delay in a case where the indictment is sealed is the date the indictment is unsealed."  Docket No. 17 at 4.  The Court does not agree.  The government cites *United States v. Hay*, 527 F.2d 990, 994 (10th Cir. 1975), in support of the argument, but, to the extent that *Hay* stands for that proposition, it is inconsistent with *Doggett,* which counted the delay from the date of the indictment, despite the defendant having no knowledge of the indictment, 505 U.S. at 655 (noting that speedy trial is "triggered by arrest, indictment, or other official accusation"), and has not been mentioned by post-*Doggett* Tenth Circuit cases as an exception to the general rule.  *See, e.g., Batie*, 433 F. 3d at 1290 ("length of delay is measured from the time at which the speedy trial right attaches: the earlier of either arrest or indictment").  *Cf. United States v. Leaver*, 358 F. Supp. 2d 255, 268 n.106 (S.D.N.Y. 2004) (noting *Hay*'s inconsistency with post-*Doggett* cases).

Alien Section found a possible address and vehicle information through a records check in January 2020, which was forwarded to the Fugitive Operations Unit and which led to his March 4 arrest. *Id*. at 6.  The government states that the defendant drove vehicles registered to other persons, used his older brother's identification, and had a counterfeit Mexican identification card in his possession when arrested. *Id*.  Based on these efforts, the Court finds that the government was diligent in attempting to locate and arrest the defendant.  While there are gaps in the search efforts, most notably the gap between March 2015 and March 2018, attempts to locate the defendant after the gaps produced the same result — a lack of leads as to the defendant's whereabouts. *Compare Doggett*, 505 U.S. at 652-653 ("For six years, the Government's investigators made no serious effort to test their progressively more questionable assumption that Doggett was living abroad, and, had they done so, they could have found him within minutes.").  Moreover, although the defendant claims that he was living in Thornton the entire time, he does not claim that he was living in the same place or at a location to which he could be traced.  Finally, the Court infers that the defendant was attempting to avoid detection based on the government's representation that the defendant drove vehicles that were registered to other people, used his older's brother's ID, and was in possession of a counterfeit Mexican ID when arrested.  While the defendant did not know of the federal indictment, he has no legal status in the United States and therefore knew he was always subject to arrest and deportation.  Thus, he had a motive to avoid detection and, based on the above evidence, the Court finds that he actively did so.  Such efforts made it more difficult for law enforcement to locate the defendant.

6

"[L]aw enforcement officials are not expected to make heroic efforts to apprehend a defendant who is purposefully avoiding apprehension." *United States v. Frater*, 495 F. App'x 878, 882 (10th Cir. 2012) (unpublished) (quoting *Rayborn v. Scully*, 858 F.2d 84, 90 (2d Cir. 1988)); *see also United States v. Anderson*, 185 F.3d 875 (Table), 1999 WL 393658, at *3 (10th Cir. 1999) (unpublished) ("Anderson's evasive conduct outweighs any negligence on the part of the government."). As a result, the Court finds that law enforcement officers' efforts to locate the defendant were not negligent. The Court determines that the second factor weighs in favor of the government.

**Assertion of Speedy Trial Right** - The third factor is the defendant's invocation of his right to a speedy trial under the Sixth Amendment. The defendant not only quickly invoked his right upon arrest, but there is no evidence to suggest that he was aware of the indictment. As a result, this factor weighs in favor of the defendant.

**Prejudice to Defendant** - The final factor is whether the delay has prejudiced the defendant. Such prejudice is analyzed in terms of pretrial incarceration, anxiety or concern by the defendant, and the possibility that the defense will be impaired. *Batie*, 433 F.3d at 1292. The defendant was released on bond at his initial appearance; the defendant does not argue anxiety or concern. Thus, the issue is whether the five-year delay has possibly impaired his defense.

The defendant makes no attempt to show specific prejudice he may suffer in defending himself in this case, but, as he notes, "[c]onsideration of prejudice is not limited to the specifically demonstrable," and "affirmative proof of particularized prejudice is not essential to every speedy trial claim." Docket No. 16 at 7, citing

*Doggett*, 505 U.S. at 655.  Impairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony "can rarely be shown."  *Barker*, 407 U.S. at 532.  "While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria, it is part of the mix of relevant facts, and its importance increases with the length of the delay."  *Doggett*, 505 U.S. at 655-656.

Here, the Court does not find that the length of the delay was so extreme as to presume prejudice for purposes of analyzing the fourth factor.  As the Tenth Circuit noted in Margheim,

> in most circumstances, failure to specify prejudice will eviscerate the defendant's claim.  *See United States v. Toombs*, 574 F.3d 1262, 1275 (10th Cir. 2009) (distinguishing defendant's twenty-two-month delay from *Doggett*'s "extreme" eight-year delay); *see also Seltzer*, 595 F.3d at 1180 n.3 ("Generally, the court requires a delay of six years before allowing the delay itself to constitute prejudice.").

770 F.3d at 1329.  While a five-year delay is undoubtedly lengthy, it is appropriate to take into account the nature of the charge in this case.  The elements of count one of the indictment are (1) the defendant was an alien at the time alleged in the indictment; (2) the defendant had previously been excluded or deported from the United States; (3) the defendant was found in the United States; and (4) the defendant had not received the consent of the proper legal authority to reapply for admission to the United States. 2011 Tenth Circuit Criminal Pattern Jury Instruction 2.05.  The government indicates that, in his "sworn statement" to the ICE agent on October 11, 2014 after waiving his Miranda rights, the defendant stated

8

> (1) his true and correct name is Juan Manuel Alvarado-Rico;
> (2) he is a citizen and native of Mexico, born on December
> 15, 1971; (3) he was previously deported in 2003 in Laredo,
> Texas; (4) he re-entered the United States in 2004 at or
> near Douglas, Arizona by walking through the desert and
> was not subject to inspection by an immigration officer; and,
> (5) he did not seek permission from the Attorney General or
> the proper authority to re-enter the United States.

Docket No. 17 at 2. As noted by the government, when the defendant's 2014 statement is compared to the elements of the charge, it is clear that the defendant has admitted to all but one element. The other element, that the defendant was found in the United States, is not disputed. As a result, the passage of time in this case would have less effect on the possibility of prejudice than in cases involving other types of charges. The fourth factor weighs in favor of the government.

When the Court balances each of the four factors, the Court concludes that the defendant's speedy trial right under the Sixth Amendment has not been violated. Accordingly, it is

**ORDERED** that defendant Juan Manuel Alvarado-Rico's Motion to Dismiss Indictment for Violation of Sixth Amendment Right to a Speedy Trial [Docket No. 16] is denied.

DATED May 5, 2020.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge